# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| PAMELA J. SWISS, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 2:05-CV-203-PRC |
| | ) |
| ROBERT STIGLICH, personal representative | ) |
| of Steven Stiglich, AUDITOR, Lake County, Indiana, | ) |
| and LAKE COUNTY, INDIANA, a Political Subdivision, | ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter is before the Court on (1) a Motion for Summary Judgment [DE 31], filed by the Defendants on February 15, 2007; (2) Plaintiff Pamela J. Swiss's Motion to Strike Defendants' Summary Judgment Exhibits Number 5, 7, 9, And 11 [DE 39], filed by the Plaintiff on May 4, 2007; and (3) on Defendants' Motion to Strike Plaintiff's Exhibits Designated in Opposition to Summary Judgment [DE 48], filed by Defendants on May 31, 2007.

## PROCEDURAL BACKGROUND

Plaintiff Pamela J. Swiss filed a Complaint in this matter on May 18, 2005, containing the following counts: Count I (Breach of Contract only as to Lake County, Indiana); Count II (Promissory Estoppel only as to Lake County, Indiana); Count III (Retaliatory Discharge); Count IV (Interference with Voting Rights and Freedom of Association); and Count V (Violation of Procedural Due Process).

1

Defendants Steven Stiglich and Lake County, Indiana filed an Answer to the Complaint on June 3, 2005.

On October 4, 2005, a Motion to Substitute Party was filed, and on October 25, 2005, the Court granted the motion, and ordered that Robert Stiglich, personal representative of Steven Stiglich, be substituted for Defendant Steven Stiglich in his individual capacity (deceased) and that the Lake County Auditor be substituted for Steven Stiglich in his official capacity as Lake County Auditor.

Defendants' Motion for Summary Judgment and related Rule 56 Motions to Strike became fully briefed on June 13, 2007.

The parties have consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case.  Thus, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## MOTIONS TO STRIKE

### A.  Plaintiff's Motion to Strike [DE 39]

Plaintiff seeks to strike Exhibit numbers 5, 7, 9 and 11 submitted by Defendants in support of their Motion for Summary Judgment on the basis that these exhibits constitute inadmissible hearsay, lack proper foundation, and/or are not properly authenticated.

*1. Defendants' Exhibit 5*

Defendants' Exhibit 5 is a listing of the Lake County Auditor's Office Finance Department job duties and a description of the functions and responsibilities of the Finance Department. Exhibit 5 also contains an organizational chart for the Lake County Auditor's Office. In his Affidavit, James Wieser, attorney for the Lake County Auditor's office at the times relevant to the claims asserted by the Plaintiff (hereinafter "Attorney Wieser"), states that the documents designated as Exhibit 5 are true and accurate records of the Lake County Auditor's Office Finance Department. Plaintiff asserts that Attorney Wieser does not purport to have prepared the documents, does not specify which of the duties were Plaintiff's, and provides no foundation for how he knows any of the listed duties were Plaintiff's.

The Court finds that Defendants' Exhibit 5 contains documents generated and maintained by the Lake County Auditor's office in the regular course of business and that Attorney Wieser's Affidavit provides the necessary foundation and authentication for these documents. Accordingly, the Court denies the Plaintiff's request to strike Defendants' Exhibit 5.

*2. Defendants' Exhibit 7*

Defendants' Exhibit 7 is a letter from Mark Pearman, Executive Director of Lake County Data Processing, to Attorney Wieser concerning Plaintiff's job performance. Plaintiff claims that Exhibit 7 should be stricken as inadmissible hearsay since Attorney Wieser did not prepare the statements contained in Exhibit 7, nor does he purport to have direct knowledge of their truthfulness. Subsequent to the filing of Plaintiff's Motion to Strike, Defendants filed a Supplemental Designation of Evidence [DE 47], which contains an Affidavit of Mark Pearman (Exh. 13). In his Affidavit,

Pearman identifies Exhibit 7 as a "true and accurate copy of a memorandum that was prepared by myself and employees of Data Processing, by and through my direction in the course and scope of my employment as the Executive Director of Lake County Data Processing, and due to a request of the Lake County Auditor."  Def. Br., Exh. 13, at ¶4.  Pearman also states that "Exhibit 7 consists of information that I personally became aware of by and through my job function as the Executive Director for Lake County Data Processing and experiences that occurred while Pamela Swiss was employed at the Lake County Auditor's office."  Def. Br., Exh. 13, at ¶ 5.

The Court finds that Pearman's Affidavit provides sufficient foundation and authentication for Exhibit 7 and thus denies Plaintiff's Motion to Strike Defendants' Exhibit 7.


*3.  Defendants' Exhibit 9*

Defendants' Exhibit 9 is a letter dated January 27, 2005, from Attorney Wieser to the Lake County Board of Commissioners regarding the termination of Plaintiff.  Plaintiff claims that the letter is comprised almost entirely of hearsay statements that third persons supposedly made to Attorney Wieser and others.  Attorney Wieser's Affidavit provides the necessary foundation and authentication that Exhibit 9 was a record prepared in the regular course of business of the Lake County Auditor's Office.  *See Contes v. Johnson & Johnson,* 756 F.2d 524, 549 (7th Cir. 1985) (disciplinary memoranda considered business records); Federal Rule of Evidence 803(6).  Although Exhibit 9 may contain hearsay statements, the primary purpose of Exhibit 9 is not the truth of the matter asserted therein but rather the basis of the Auditor's belief that Pamela Swiss failed to perform her employment duties.  For these reasons the Court denies Plaintiff's Motion to Strike Defendant's Exhibit 9.

*4. Defendants' Exhibit 11*

Defendants' Exhibit 11 is a document dated November 1, 2005, prepared by Mike Wieser, Pamela Swiss' replacement as Director of Finance, and addressed to Attorney Wieser concerning Plaintiff's job performance. Plaintiff asserts that the document, dated ten months after the date Plaintiff was terminated, contains inadmissible hearsay, and lacks sufficient foundation to be admissible.

The Defendants submitted an Affidavit of Mike Wieser (Exh. 12), in which he states that "The information contained within paragraph 1-11 of Defendants' Exhibit 11 was information *either* personally observed by me, by and through my employment with the Lake County Auditor's office, *and/or information personally obtained by me in the course of my employment and at the request of the Auditor's office.*" Def. Br., Exh. 12, at ¶ 7 (emphasis added). The Court finds that this statement is insufficient to lay the proper foundation for Exhibit 11 in that Wieser does not assert that he has personal knowledge of all of the facts set forth in Exhibit 11 nor does he specify which facts he has personal knowledge of. *See* Fed. R. Civ. P. 56(e) ("Supporting and opposing affidavits shall be made on *personal knowledge*, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein") (emphasis added). As such, the Court grants the Plaintiff's request to strike Defendants' Exhibit 11.

**B.  Defendants' Motion to Strike [DE 48]**

Defendants move to strike Plaintiff's Exhibit A, paragraphs 2, 3, 4, 11, 12, 13, 20, 21, 22,

23, 24, 25, 27, Exhibit E, Exhibit B, Exhibit I, and Exhibit J on the basis that the "documents and/or

information were never provided despite requests for the same, constitute inadmissible hearsay, lack foundation and authenticity, and are irrelevant."  Def. Br., pp. 1-2.

### 1. Plaintiff's Exhibit A

Plaintiff's Exhibit A is titled "Verified Statement of Pamela J. Swiss in Opposition to Defendants' Motion for Summary Judgment."  Defendants move to strike thirteen different paragraphs in Exhibit A for several reasons, including the following: statements made are not based on personal knowledge and do not set forth such facts as would be admissible into evidence or show that Plaintiff is competent to testify as to the matters stated therein; inadequate foundation has been laid for  much of the statements contained within the Affidavit; many of the statements are hearsay statements; and the statements made by Plaintiff within the Affidavit are impermissibly conclusive in nature rather than plain factual assertions.

In ruling on a motion for summary judgment, the Court considers only evidence that would be admissible at trial.  *See Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir.2000). To the extent Plaintiff's Affidavit statements would be inadmissible if she offered them at trial, the Court will not consider them or the portions of the brief they purport to support.  The Court is able to sift through the evidence and to consider each piece under the applicable federal rules, thus there is no need to strike any part of the Plaintiff's Affidavit.  The Court takes into consideration the challenges Defendants have raised as to the admissibility of certain paragraphs of Plaintiff's Affidavit. Accordingly, the Court denies the Defendants' motion to strike Plaintiff's Exhibit A as unnecessary.

*2.   Plaintiff's Exhibits E & F*

Plaintiff's Exhibit E contains Plaintiff's primary voting records.  Defendants assert that Exhibit E should be stricken because these documents were not within the documents provided by the Plaintiff in response to the Defendants' Request for Production of Documents, which requested "any and all documents and/or information within the plaintiff's attorney's possession and/or any and all documents and/or information which may be obtainable by the plaintiff which the plaintiff contends support the allegations as stated by the plaintiff in plaintiff's Complaint."  Def. Br., p. 3.

In response, Plaintiff argues that Defendants have known from the inception of this case that Plaintiff's voting record was at issue in connection with her freedom of association claim and that the duty to supplement discovery responses presupposes that the prior response was in some "material respect incomplete or incorrect."  Plaintiff asserts that because she did not have her voting record in her possession until August 15, 2006, which was after the date that her response to Defendants' document request was served on Defendants, her response was not incomplete or incorrect.  In the alternative, Plaintiff claims that even if her response was incomplete or incorrect, the information had otherwise been made known to the Defendant through Plaintiff's initial disclosures and through her deposition testimony.  Lastly, Plaintiff contends that Defendants can show no prejudice by their failure to obtain the voting records sooner since primary voting records are public documents accessible to the public.

Plaintiff's Exhibit F is a Grievance Initiation Form for Lake County employee.  Plaintiff avers in her Affidavit that she timely filed the Grievance on February 7, 2005, that the Grievance Review Board never responded, and that she was informed by an attorney from Lake County to hire an attorney and take the matter to court since the grievance process would be futile.  Similar to

Exhibit E, Defendants moves to strike Exhibit F based on the Plaintiff's failure to disclose the document during discovery.

In response, Plaintiff contends that she "did not come across Exhibit F until after the date that her response to Defendants' document request were served on Defendants."  Pl. Br., p. 3. Plaintiff also claims that Defendants have suffered no undue prejudice in the delayed receipt of Exhibit F, since Exhibit F pertains to Defendants' Affirmative Defense number 5.

In their reply brief in support of their Motion to Strike, Defendants assert that Exhibit F was in the possession of Plaintiff since before the inception of this lawsuit, yet the document was not provided to Defendants during discovery, thus depriving Defendants a proper amount of time during the prescribed discovery period to conduct investigation as to the veracity and/or authenticity of the document.  Defendants further claim that they are prejudiced by their inability to speak with the alleged "Lake County attorney" referenced in Plaintiff's Affidavit as to whether Plaintiff's Exhibit F was filed properly.

 The Federal Rules of Civil Procedure are designed to promote liberal discovery in an effort to focus the issues for trial and to prevent unfair surprise.  In accordance with this goal, Rule 26 addresses the duty to supplement discovery:

> (e) Supplementation of Disclosures and Responses. A party who has made a disclosure under subdivision (a) or responded to a request for discovery with a disclosure or response is under a duty to supplement or correct the disclosure or response to include information thereafter acquired if ordered by the court or in the following circumstances:
>
> (1) *A party is under a duty to supplement at appropriate intervals its disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.*

. . .

> (2) *A party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect <u>incomplete</u> or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.*

Fed. R. Civ. P. 26(e) (emphasis added).

Should the court determine that a party has violated Rule 26(e)(2) by failing to timely supplement a discovery response, the court may, at its discretion, impose sanctions including an order barring the undisclosed evidence, a continuance, or any other action the court deems appropriate under the circumstances. *See Holiday Inns, Inc. v. Robertshaw Controls Co.*, 560 F.2d 856, 858 (7th Cir. 1977).

The Court finds that the Plaintiff violated the rules of discovery by failing to supplement her 26(a)(1) initial disclosures and discovery responses to Defendants' request for production of documents with disclosure of her primary voting records and Grievance Initiation Form (Exhibits E & F). These documents fall within the disclosure mandates of 26(a)(1) and are responsive to Defendants' request for production of documents. Plaintiff states that she did not have her voting records in her possession until August 15, 2006, and "did not come across [the Grievance Initiation Form] until <u>after</u> the date that her responses to Defendants' document request were served on Defendants." Pl. Br., p. 3. However, Plaintiff's failure to receive or discover responsive documents until after she responded to the Defendants' discovery requests does not excuse Plaintiff from her duty to timely supplement initial disclosures and discovery responses throughout the duration of her case. *See* Fed. R. Civ. P. 26(e). The Court cannot allow Plaintiff to withhold relevant evidence that she received or "came across" sometime after responding to Defendants' discovery requests, only

10

to be disclosed in responding to Defendants' Motion for Summary Judgment.  This would not facilitate the liberal discovery that the Federal Rules are designed to promote and would unfairly prejudice the Defendants at this stage of the litigation.  Accordingly, the Court grants the Defendants' request to strike Exhibits E and F.  The Court notes, however, that this ruling has little effect on the outcome of the Court's ruling on the Defendants' Motion for Summary Judgment.

### 3.  *Plaintiff's Exhibit I*

Plaintiff's Exhibit I consists of "Notes of Appreciation to Swiss from Employees." Defendants move to strike Exhibit I based on hearsay, insufficient authentication and foundation, and relevancy.  Defendants correctly point out that Plaintiff does not reference Exhibit I at any point in her Memorandum in Opposition to the Defendants' Motion for Summary Judgment or explain to the Court the significance of these documents.  In response, Plaintiff states that the notes were submitted "merely to show that Swiss is not the ogre that Defendants try to manufacture."  Pl. Br., p 3.  The Court strikes Exhibit I as irrelevant.

### 4.  *Plaintiff's Exhibit J*

Plaintiff's Exhibit J is a February 13, 2005 Post Tribune newspaper article.  Defendants move to strike Exhibit J based on relevancy since Plaintiff's Memorandum in Opposition to the Defendants' Motion for Summary Judgment does not reference or cite to Exhibit J or explain its relevance.  Plaintiff, in her response, states that "Exhibit J is an article discussing what has been dubbed 'Scheub's Fund,' and merely substantiates Swiss's allegations of improper accounting

practices as relates to Lake County's self-insurance fund."  Pl. Br., p. 3. The Court strikes Exhibit
J as irrelevant.


## MOTION FOR SUMMARY JUDGMENT

Pending before the Court is a Motion for Summary Judgment filed by the Defendants on
February 15, 2007.  The Defendants move for summary judgment on all of Plaintiff's federal claims:
Count III (Retaliatory Discharge); Count IV (Interference with Voting Rights and Freedom of
Association); and Count V (Violation of Procedural Due Process).  Defendants also move to dismiss
Plaintiff's pendent state law claims:  Count I (Breach of Contract only as to Lake County, Indiana)
and Count II (Promissory Estoppel only as to Lake County, Indiana) on the basis that if Plaintiff's
federal question claims are dismissed, then Plaintiff's pendent state law claims should be dismissed
as well since the Court's supplemental jurisdiction is discretionary.


### A.  Summary Judgment Standard

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories,
and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to
any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R.
Civ. P. 56(c).  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after
adequate time for discovery and upon motion, against a party who fails to make a showing sufficient
to establish the existence of an element essential to that party's case, and on which that party will
bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "[S]ummary
judgment is appropriate-in fact, is mandated-where there are no disputed issues of material fact and

the movant must prevail as a matter of law.  In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe. Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.  The moving party may discharge its "initial responsibility" by simply "'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the non-moving party's case." *Id.* at 325.  When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim.  *Id.* at 323, 325; *Green v. Whiteco Indus., Inc*., 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1526 (7th Cir. 1990).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings.  Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994).  Rule 56(e) provides that "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See NLFC, Inc. v. Devcom Mid-Am., Inc*., 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). A court's role is not to evaluate the weight of the evidence, to judge the credibility of the witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 447 U.S. at 249-50; *Doe*, 42 F.3d at 443.

## B.  Factual Background

Stephen Stiglich (hereinafter, "Stiglich") was the Lake County Auditor from approximately January 2003 until February 2005. In May 2004, Plaintiff Pamela Swiss was hired as the Director of Finance for the Lake County Auditor's office. Judy Companik, Chief Deputy Auditor, was Plaintiff's director supervisor at the Lake County Auditor's Office. As the Director of Finance, Plaintiff was an at-will employee. Prior to her employment with the Auditor's office, Plaintiff had held a position with the Indiana State Board of Accounts for approximately twenty years. Angela Groathas was Plaintiff's predecessor as Director of Finance for the Lake County Auditor's office. Presently, and at the time Plaintiff was the Director of Finance, Mark Pearman is/was the Executive Director of Lake County Data Processing. Cenifax is the data processing entity for Lake County. During the time Swiss was the Director of Finance, Deborah Rondelli was employed by Cenifax as a financial consultant for Lawson Software. Lawson Software provides fund accounting for the Auditor's Office and all other County offices, thus making Lake County compliant with legal requirements for reporting purposes. During Plaintiff's employment as the Director of Finance,

14

Deborah Rondelli, through her employment with Cenifax, had interaction with the Lake County Auditor's office.

Prior to her acceptance of an offer of employment as the Director of Finance, Plaintiff attended a Porter County Democratic Jefferson/Jackson dinner.  While at the dinner function, Leon West, the Porter County Democratic Chairman, told Swiss that the Democratic Party would be checking her primary ticket and that she had better not embarrass Stiglich.  Plaintiff has been a long-time member of the Republican party, and voted in the Republican primaries for more than twenty years.  In the 2004 primary election, Plaintiff registered as a Democrat and voted a Democratic party ticket for the first time ever.

Upon acceptance of her position as Director of Finance for the Lake County Auditor's office, Plaintiff was provided a copy of the Lake County Employment Policies.  § 32.10 of the Policies pertains to immediate discharge and states:

> In some instances, the official may conclude the employee's conduct justifies immediate discharge. The official has no obligation to use any of these forms of discipline before discharging an employee. However, in all instances, a written record shall be made of each action, including an oral warning. The original written record shall be maintained in the employee's personnel file and a copy given to the employee.

Def. Br., Exh. 6, at § 32.102.

The Employment Policies provide that the grievance procedure is "the mechanism to be used to appeal disciplinary action in cases wherein the employee contends that the action taken was based on race, sex, religion, age, national origin, handicap, political association, or protected speech in violation of their civil or constitutional rights." Def. Br., Exh. 6, at § 32.115.  The grievance procedure allows for a plenary hearing and evidentiary hearing on the issues alleged by the

15

employee.   Def. Br., Exh. 6, at § 32.118(C). The grievance/appeal over the official's action must be made within fourteen (14) days of notice of the official's action. *Id.*

The Finance Department for the Lake County Auditor's office oversees the financial accounting system of the County, is responsible for the preparation of financial reports, the compilation and preparation for publication of the budget and proposed tax levies for all funds subject to the budget laws, and preparation of semiannual settlement of taxes to all units of local government.   Historically, the Director of Finance was directly responsible for preparation of the budget, tax abstracts and settlement of taxes.   The material duties of Plaintiff's job as Director of Finance were to: oversee the employees of the finance department, prepare the abstract and tax settlement, oversee payroll, and make sure that monies are deposited into and withdrawn from the proper accounts.

James L. Wieser was the attorney for the Lake County Auditor during the time Plaintiff was employed as Director of Finance.  Attorney Wieser received several complaints regarding Plaintiff's job performance after she began her employment with the Lake County Auditor's office.   Attorney Wieser received complaints from Mark Pearman, the Director of Data Processing for the County, County Surveyor George Van Til, Peggy Kotona, Treasurer at the time Plaintiff was employed as the Lake County Auditor's Finance Director, and Deborah Rondelli.  Attorney Wieser also received a complaint with regard to a County Council study session that Plaintiff had attended during which she expressed allegedly inappropriate and embarrassing comments.  Attorney Wieser recalled a couple of people within the Auditor's office who found Plaintiff to be uncooperative and uncommunicative.   Attorney Wieser never communicated any of these complaints concerning Plaintiff to Plaintiff or to Companik, Plaintiff's direct supervisor.

16

As a result of the complaints and issues, Attorney Wieser discussed with Stiglich his concern of the cumulative effects of Plaintiff's job incompetence and unprofessionalism.  Stiglich responded that he was receiving complaints as well, however, being heavily involved in and devoted to his reelection campaign, he wanted to wait until after the election to more thoroughly address the matter.  Also, as a result of the complaints and issues arising with Plaintiff's job performance, Attorney Wieser requested that Mark Pearman, or anyone at Cenifax data processing, prepare and provide a written list of complaints/issues they perceived regarding Plaintiff's job performance.  In response, Pearman provided Attorney Wieser with a one-page memorandum dated January 21, 2005.  Def. Br., Exh.7.  Within the Memorandum, Pearman indicates job performance problems pertaining to the preparation of settlements, issuing advance checks without following proper accounting principles, lack of training on the Lawson software, a lack of understanding or willingness to assist other departments with requests placed on the County Council agenda, and an inability to balance the 501 Fund with the computer program's Lawson and MVP programs.  *Id.*

As a result of the continued complaints, Attorney Wieser did not believe that Plaintiff could competently perform the duties required of the Finance Director for the Lake County Auditor's office.  After making that determination, Attorney Wieser spoke with Stiglich and was asked by Stiglich to request that Companik meet with Plaintiff and discuss her termination or resignation.  Companik was surprised at Attorney Wieser's instruction to fire Plaintiff, because up to that point, it was Companik's impression that Plaintiff was doing a good job.

On January 26, 2005, Companik, pursuant to the directive made by Stiglich, spoke with Plaintiff and informed her that she was going to be terminated and that her last day was effective January 28, 2005.  On January 26, 2005, Plaintiff delivered a resignation letter.  On January 27,

17

2005, Attorney Wieser, on behalf of the Lake County Auditor, prepared and forwarded a written letter to the Lake County Board of Commissioners and the Lake County Council regarding the termination of Plaintiff, and the reasons therefor.  Also on January 27, 2007, Plaintiff tendered a letter rescinding her resignation.  On January 28, 2005, Stiglich prepared and forwarded a letter accepting Plaintiff's resignation.

There exists a factual dispute in this case as to whether after her termination or resignation Plaintiff sought or engaged in any of the grievance procedures provided by the Lake County Employment Policies.  Attorney Wieser, in his Affidavit, states that Plaintiff did not seek or obtain any grievance hearing as afforded by the employment policy.  Plaintiff avers that Attorney Wieser's statement is false, that she filed her Grievance Initiation Form on February 7, 2005, and that the Grievance Review Board never responded.[1]

## C.  Analysis

*1.  Count III - Retaliatory Discharge*

In her Memorandum in Opposition to Motion for Summary Judgment, Plaintiff withdraws Count III of her Complaint.  Accordingly, the Court denies the Defendants' Motion for Summary Judgment as to Count III of Plaintiff's Complaint as moot.

---

[1] However, as discussed later herein at Section 3.A., because Plaintiff's Count V due process claim is denied on a separate basis, the existence of this factual dispute is moot.

*2. Count IV - Interference with Voting Rights and Freedom of Association*

Plaintiff asserts Count IV of her Complaint against Robert Stiglich, as personal representative of Steven Stiglich, the Lake County Auditor, and Lake County, Indiana. Plaintiff alleges that she unwillingly voted the Democratic ticket in the primary because she knew that Auditor Stiglich and the Democratic Party would be verifying her vote and she believed her new job to be in jeopardy if she did not vote as demanded. Plaintiff also alleges that as a result of such intimidation, she was deprived of her constitutional right to associate with the Republican Party.

In their Memorandum in Support of Summary Judgment, Defendants assert that Plaintiff cannot designate sufficient evidence to demonstrate that Stiglich interfered with Plaintiff's voting rights and/or freedom of association. Defendants claim that at no time did Stiglich ever specifically advise Plaintiff that as a requirement of her employment with the Lake County Auditor's office that she was required to affiliate with one political party or another.

In response, Plaintiff contends that Stiglich acted under color of law in making her party affiliation an issue in her employment with the Lake County Auditor's office and asserts that she has pointed to specific evidence showing that Defendants violated her First Amendment right of association. Specifically, in paragraph 56 of her Complaint, Plaintiff alleges that she "was approached by Porter County Democratic Chairman Leon West, and was informed that Stiglich and the Democratic Party would be checking her primary ticket, and that she had better not embarrass her new boss, Auditor Stiglich, who also was the Lake County Democratic Chairman." (Compl. ¶ 56). In her Memorandum in Opposition to Motion for Summary Judgment, Plaintiff also references several statements from paragraph 11 of her Affidavit as support for Count IV of her Complaint.

However, upon review of paragraph 11 of Plaintiff's Affidavit, the Court finds that several of the statements that Plaintiff cites to in paragraph 11 contain hearsay and will therefore not be considered by the Court in ruling on Defendants' Motion for Summary Judgment. The Court strikes the following underlined portions of paragraph 11 of the Plaintiff's Affidavit as inadmissible hearsay:

> Not only did Leon West approach me at the Jefferson/Jackson Dinner concerning his discussion with Auditor Stiglich, _Stiglich also directly told me that he was concerned that someone would look at my voting history._ Stiglich and I had several political conversations in his office during work hours _to the effect of my voting Democrat in the upcoming primary election._ _In addition, Stiglich demanded that I appear to have 'switched parties' and to become active with the local Democrat party. He expressed concern that it would appear he hired a Republican from another county being paid from Democrat tax dollars in Lake County._ In efforts to appease him and protect my job, I had my picture taken with Senator Bayh (Democrat) and placed it openly in my office. When the Lt. Governor (Democrat) visited, I led her to the various offices in the county complex and introduced her. _Stiglich also directed me and a couple other staff members to donate time working at Congressman Pete Visclosky's office_ - I believe I worked three evenings and then once to greet the Governor. I also attended Lake County Commissioner Scheub's fundraiser. _I did everything Stig asked me to do in the political arena, including registering as a Democrat for voting in the Democratic primary. Shortly before my termination, Stiglich told me that he looked forward to me being active on his upcoming campaign. I was intimidated by Stiglich's insistence that I switch to the Democratic party, that I vote in the Democratic primary, and that I engage in political functions and activities that would show I was a Democrat._ I felt that if I did not comply, I faced the risk of losing my new position in the Auditor's office.

Pl. Br., Exh. A, ¶ 11.

Plaintiff brings her Interference with First Amendment Voting Rights and Freedom of Association claim under 42 U.S.C. § 1983, which provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Individual liability under 42 U.S.C. § 1983 can only be based on a finding that the defendant caused the deprivation at issue.  *See Monell v. Department of Social Servs*., 436 U.S. 658, 694 (1978); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("An individual cannot be held liable in a § 1983 action unless he caused or participated in the alleged constitutional deprivation.").  A "causal connection, or an affirmative link" must exist between the deprivation and the defendant's conduct.  *Wolf-Lillie,* 699 F.2d at 869.  In order for a defendant to be held liable under § 1983, the plaintiff must establish that the defendant was personally involved or acquiesced in the alleged constitutional violation.  *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir.1995).  An official cannot be held liable under § 1983 merely because his subordinates violated a plaintiff's constitutional rights.  *See Polk County v. Dodson,* 454 U.S. 312, 325 (1981) (holding that § 1983 will not support a claim based on a theory of respondeat superior).

Based on the evidence presented, the Court finds that the Plaintiff has not satisfied the personal-involvement requirement for liability under § 1983 for Count IV.  The Plaintiff has provided the Court with no admissible evidence which supports Plaintiff's assertion that Stiglich informed Plaintiff that she was required to vote Democratic or else she would not receive or retain a job at the Auditor's office.  None of the admissible evidence when viewed in the light most favorable to Plaintiff would support a finding or inference that Stiglich caused or participated in the alleged deprivations of Plaintiff's constitutional rights.  Further, Plaintiff has not established any factual issues for a § 1983 First Amendment claim.  Accordingly, the Court grants summary judgment in favor of the Defendants as to Count IV.

### 3. Count V - Violation of Procedural Due Process

Plaintiff asserts in Count V of her Complaint that Defendants: (1) withdrew their agreement and their promises without providing Plaintiff notice and an opportunity to be heard; (2) failed to follow Lake County's written procedure for disciplining and/or terminating Plaintiff's employment; and (3) violated Plaintiff's rights to due process under the Indiana Constitution and the United States Constitution by terminating Plaintiff's employment without following established procedural safeguards.

Defendants move for summary judgment on Count V based on: (1) Plaintiff's failure to avail herself of the administrative grievance procedure; and (2) evidence that the Lake County Personnel Policy regarding immediate discharge was complied with. In response, Plaintiff asserts that she did file a grievance and that her discharge was neither immediate nor justified.

### A. Plaintiff's Constitutional Due Process Claim

"No state shall . . . deprive any person of . . . property without due process of law . . ." U.S. Const. amend. XIV, § 1. When the states and their instrumentalities act to deprive a person of property, the Due Process Clause of the Fourteenth Amendment imposes a requirement of procedural fairness. *Id.* At a minimum, due process requires notice of the basis for the proposed action and a fair opportunity to be heard. *See Walker v. City of Hutchinson*, 352 U.S. 112, 115 (1956). The Supreme Court has held that public employees may have an interest in their continued employment which rises to the level of "property" so as to trigger the protections of procedural due process. *See Board of Regents v. Roth,* 408 U.S. 564 (1972); *Perry v. Sindermann,* 408 U.S. 593

(1972). A property interest may arise from a statute, ordinance, or contract. In *Roth,* the U.S. Supreme Court stated:

> To have a property interest in a benefit [such as a job] a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

408 U.S. at 577. The Supreme Court also held that property interests are not created by the U.S. Constitution, but rather by existing rules or understandings that stem from an independent source such as state law. *Id.* Once a property interest in a civil service job is created by the legislature, the constitutional right to due process attaches. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). However, the Court recognized the right of a state legislature to choose whether or not to create a property interest in civil service jobs. *Id.*

To establish a due process claim, Plaintiff must demonstrate: "(1) that [s]he had a constitutionally protected property interest, (2) that [s]he suffered a loss of that interest amounting to a deprivation, and (3) that the deprivation occurred without due process of law." *Moss v. Martin*, 473 F.3d 694, 700 (7th Cir. 2007) (*citing Kiddy-Brown*, 408 F.3d 346, 360 (7th Cir. 2005); *Polenz v. Parrott*, 883 F.2d 551, 555 (7th Cir. 1989)). A protected property interest in employment can arise from a state statute, regulation, municipal ordinance, or an express or implied contract. *See Johnson v. City of Fort Wayne, Ind*., 91 F.3d 922, 943 (7th Cir. 1996). To be protected, a person must have a legitimate claim of entitlement rather than only a unilateral expectation of some benefit. *See Amendola v. Schliewe*, 732 F.2d 79, 83 (7th Cir. 1984). If a deprivation has occurred, the Court evaluates what process is due Plaintiff before she can be deprived of that entitlement. *See Fittshur v. Vill. of Menomonee Falls*, 31 F.3d 1401, 1405 (7th Cir. 1994).

Plaintiff has identified no statute or contract that entitles her to hold the position of Director of Finance, thus she is an at-will employee. In Indiana, as a general rule, "an employee at will has no property interest in further employment." *Phegley v. Indiana Dep't of Highways*, 564 N.E.2d 291, 295 (Ind. Ct. App. 1990) (*citing Indiana Alcoholic Beverage Comm'n v. Gault*, 405 N.E.2d 585, 589 (Ind. Ct. App. 1980)) ("It is well established in Indiana that if one's employment is at the will of a government agency, that person has no property interest in employment at a particular rank."). Accordingly, the Court finds that Plaintiff had no protectable property interest in her position as Director of Finance for purposes of a due process claim under the Constitution.

### B. Filing of Grievance

Where a due process claim is raised against a public employer and there is a grievance and/or arbitration procedure in place, the failure to exhaust those remedies bars a due process challenge. *See e.g., Narumanchi v. Bd. Of Trustees of Conn. State Univ*., 850 F.2d 70, 72 (2nd Cir. 1988) (affirming dismissal of a tenured teacher's procedural due process claim because the teacher failed to submit to his union's grievance procedures, as set forth in a collective bargaining agreement, after he was suspended without pay); *Aronson v. Hall*, 707 F.2d 693, 694 (2nd Cir. 1983) (per curiam) (affirming a district court's dismissal of a plaintiff's procedural due process claim because "[h]aving chosen not to pursue available administrative review, [plaintiff] is hardly in a position to claim that such review denied him due process"); *Keim v. County of Bucks*, 322 F. Supp. 2d 587, 590-91 (E.D. Pa. 2004) (failure of county corrections officer to go through last of four steps in collective bargaining agreement's grievance/arbitration procedure when appealing a reprimand precluded his procedural due process claim).

Defendants assert that Plaintiff's due process claims are barred because she failed to avail herself of the administrative grievance procedure.  Plaintiff claims that she did file a Grievance Initiation Form on February 7, 2005.[2]  Thus, there exists a factual dispute as to whether Plaintiff actually sought a grievance hearing.  However, because the Court finds that Plaintiff had no property interest in her employment, Plaintiff's due process claim fails on that basis and the factual dispute regarding the filing of a grievance does not preclude the granting of summary judgment on Plaintiff's due process claim.

## C.  Compliance with Lake County Personnel Policy Regarding Immediate Discharge

Defendants also assert that summary judgment in their favor on Plaintiff's due process claim is appropriate since the evidence designated by Defendants reveals that the Defendants complied with the Lake County Employment Policy.

Section 32.102 of the Policy provides that:

> In some instances, the official may conclude the employee's conduct justifies immediate discharge.  The official has no obligation to use any of these forms of discipline before discharging an employee.  However, in all instances a written record shall be made of each action including an oral warning.  The original written record shall be maintained in the employee's personnel file and a copy given to the employee.

Def. Br., Exh. 6, at § 32.102.  Pursuant to § 32.102, Defendants claim that Stiglich was under no obligation to use any other forms of discipline for immediately discharging Plaintiff.  Defendants also contend that written documentation was generated prior to Plaintiff's discharge which

---

[2]As previously discussed, the Court strikes Plaintiff's Exhibit F based on Plaintiff's failure to provide Exhibit F to the Defendants as a supplement to Plaintiff's discovery disclosures and responses.

summarized the areas of job performance and inadequacies displayed by Plaintiff during her tenure with the Auditor's office.

Plaintiff urges that Lake County did not follow their own policy concerning immediate discharge since they: (1) notified her on a Wednesday that she was to work through the end of the week; and (2) discussed the decision to terminate her employment in the Fall of 2004, but made the actual termination decision as late as January 23, 2005. Even assuming that Plaintiff had a property interest in her employment (she did not), the Court finds these arguments by the Plaintiff unconvincing. The evidence submitted to the Court supports Defendants' contention of compliance with the Lake County Employment Policy.

### 4. Plaintiffs' State Law Claims

Defendants move to dismiss Plaintiff's pendent state law claims of Breach of Contract (Count I) and Promissory Estoppel (Count II) based on the argument that if Plaintiff's federal question claims are dismissed, then Plaintiff's pendent state law claims should also be dismissed.[3] The Court has granted summary judgment to Defendants on all of the federal claims in Plaintiff's Complaint. The usual practice in the Seventh Circuit is to dismiss state law claims whenever all federal claims have been dismissed prior to trial. See 28 U.S.C. § 1367(c)(3); East-Miller v. Lake County Highway Dept., 421 F.3d 558, 564 (7th Cir. 2005). Accordingly, the Court dismisses

---

[3]In their reply brief in support of summary judgment, the Defendants argue for the first time that the Court should grant summary judgment on Count I and II based on the merits of Plaintiff's state law claims. Because the Defendants failed to move for summary judgment on Counts I and II based on the substance of those claims or present argument in support thereof in their opening memorandum, the Court will not consider the Defendants' belated cursory attempt to substantively dismiss Counts I and II. The Court therefore limits its discussion and ruling to the issue of whether the Court should retain supplemental jurisdiction over Plaintiff's state law claims.

without prejudice Plaintiff's state law claims of Breach of Contract (Count I) and Promissory Estoppel (Count II).

## CONCLUSION

Based on the foregoing, the Court now:

(1) **GRANTS in part** and **DENIES in part** Plaintiff Pamela J. Swiss' Motion to Strike Defendants' Summary Judgment Exhibits Number 5, 7, 9, And 11 [DE 39];

(2) **GRANTS in part** and **DENIES in part** Defendants' Motion to Strike Plaintiff's Exhibits Designated in Opposition to Summary Judgment [DE 48];

(3) **GRANTS** the Motion for Summary Judgment [DE 31] insofar as the Memorandum in Support thereof at Section III.E., pp. 31-32, requests dismissal of Counts I and II of Plaintiff's Complaint;

(4) **GRANTS** Plaintiff's request contained within her Memorandum in Opposition to Motion for Summary Judgment to withdraw Count III of her Complaint, **ORDERS** Count III **WITHDRAWN**, and **DENIES as moot** the Motion for Summary Judgment [DE 31] as to Count III of Plaintiff's Complaint; and

(5) **GRANTS** the Motion for Summary Judgment [DE 31] as to Counts IV and V of Plaintiff's Complaint.

The Court **VACATES** all remaining settings and case management deadlines.

SO ORDERED this 16th day of July, 2007.

s/ Paul R. Cherry
_____
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record