# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | |
|---|---|
| PAMELA J. SWISS, | ) |
|        Plaintiff, | ) |
| | ) |
|   v. | ) CAUSE NO.: 2:05-CV-203-PRC |
| | ) |
| ROBERT STIGLICH, personal representative | ) |
| of Steven Stiglich, AUDITOR, Lake County, Indiana, | ) |
| and LAKE COUNTY, INDIANA, a Political Subdivision, | ) |
|        Defendants. | ) |

## OPINION AND ORDER

This matter is before the Court on Plaintiff Pamela J. Swiss's Motion to Alter or Amend the Judgment Entered on July 16, 2007 [DE 61], filed by Plaintiff on July 25, 2007. As set forth below, the Court grants in part and denies in part Plaintiff's Motion and amends the July 16, 2007 Opinion and Order to reinstate Counts I, II, and IV of Plaintiff's Complaint.

## PROCEDURAL BACKGROUND

Plaintiff Pamela J. Swiss filed a Complaint in this matter on May 18, 2005, against Defendants Steven Stiglich, individually and in his official capacity as Auditor, and Lake County, Indiana, containing the following counts: Count I (Breach of Contract only as to Lake County, Indiana); Count II (Promissory Estoppel only as to Lake County, Indiana); Count III (Retaliatory Discharge); Count IV (Interference with Voting Rights and Freedom of Association); and Count V (Violation of Procedural Due Process).

Defendants Steven Stiglich and Lake County, Indiana, filed an Answer to the Complaint on June 3, 2005.

1

On October 4, 2005, a Motion to Substitute Party was filed, and, on October 25, 2005, the Court granted the motion and ordered that Robert Stiglich, personal representative of Steven Stiglich, be substituted for Defendant Steven Stiglich in his individual capacity (deceased) and that the Lake County Auditor be substituted for Defendant Steven Stiglich in his official capacity as Lake County Auditor.

On February 15, 2007, Defendants filed a Motion for Summary Judgment; on May 4, 2007, Plaintiff filed a Rule 56 Motion to Strike; and on May 31, 2007, Defendants filed a Rule 56 Motion to Strike.  In the Motion for Summary Judgment, Defendants sought summary judgment on all of Plaintiff's federal claims: Count III (Retaliatory Discharge); Count IV (Interference with Voting Rights and Freedom of Association); and Count V (Violation of Procedural Due Process). Defendants also moved to dismiss Plaintiff's pendent state law claims:  Count I (Breach of Contract only as to Lake County, Indiana) and Count II (Promissory Estoppel only as to Lake County, Indiana) on the basis that, if Plaintiff's federal question claims are dismissed, then Plaintiff's pendent state law claims should be dismissed as well since the Court's supplemental jurisdiction is discretionary.

On June 13, 2007, the motions became fully briefed.  In Plaintiff's response brief in opposition to summary judgment, Plaintiff withdrew Count III of her Complaint.

On July 16, 2007, the Court granted in part and denied in part Plaintiff's Motion to Strike, granted in part and denied in part Defendants' Motion to Strike, granted the motion for summary judgment as to counts IV and V of Plaintiff's Complaint, denied as moot the motion for summary judgment as to Count III and ordered Count III withdrawn, and dismissed Counts I and II of

Plaintiff's Complaint, declining to exercise supplemental jurisdiction over the state claims in the absence of any remaining federal claims.

On July 25, 2007, Plaintiff filed the instant Motion to Alter or Amend the Judgment Entered on July 16, 2007.  Defendants filed a response on August 9, 2007.  Plaintiff did not file a reply in support of the motion.

## FACTUAL BACKGROUND[1]

Stephen Stiglich (hereinafter, "Stiglich") was the Lake County Auditor from approximately January 2003 until February 2005.  In May 2004, Plaintiff Pamela Swiss was hired as the Director of Finance for the Lake County Auditor's office.  Prior to her employment with the Auditor's office, Plaintiff held a position with the Indiana State Board of Accounts for approximately twenty years.  Judy Companik, Chief Deputy Auditor, was Plaintiff's direct supervisor at the Lake County Auditor's Office.  Angela Groathas was Plaintiff's predecessor as Director of Finance for the Lake County Auditor's Office.  At the time Plaintiff was the Director of Finance and at the time that the Motion for Summary Judgment was briefed, Mark Pearman was the Executive Director of Lake County Data Processing.  Cenifax is the data processing contractor for Lake County.  During the time Plaintiff was the Director of Finance, Deborah Rondelli was employed by Cenifax as a financial consultant for Lawson Software.  Lawson Software provides fund accounting for the Auditor's Office and all other County offices, thus making Lake County compliant with legal requirements for reporting purposes.  During Plaintiff's employment as the Director of Finance, Deborah

---

[1] The facts set forth herein are reproduced from the Court's July 16, 2007 Opinion and Order with minor alterations.  Of substantive note, the Court removed the sentence: "As the Director of Finance, Plaintiff was an at-will employee" as a result of its holding in Part A.1. below.  To the extent that the Court's ruling on the instant Motion to Alter or Amend requires the Court to reconsider additional facts in order to rule on the Motion for Summary Judgment, the Court will include those facts at the appropriate time in the analysis set forth below.

Rondelli, through her employment with Cenifax, had interaction with the Lake County Auditor's office.

Prior to beginning her employment as the Director of Finance but after having accepted the job offer, Plaintiff attended a Porter County Democratic Jefferson/Jackson dinner. While at the dinner function, Leon West, the Porter County Democratic Chairman, told Plaintiff that the Democratic Party would be checking her primary voting ticket and that she had better not embarrass Stiglich. Plaintiff had been a long-time member of the Republican party and had voted in the Republican primaries for more than twenty years. In the 2004 primary election, Plaintiff registered as a Democrat and voted a Democratic party ticket for the first time ever.

Upon acceptance of her position as Director of Finance for the Lake County Auditor's office, Plaintiff was provided a copy of the Lake County Employment Policies (hereinafter, "Employment Policies"). Section 32.10 of the Employment Policies pertains to immediate discharge and provides:

> In some instances, the official may conclude the employee's conduct justifies immediate discharge. The official has no obligation to use any of these forms of discipline before discharging an employee. However, in all instances, a written record shall be made of each action, including an oral warning. The original written record shall be maintained in the employee's personnel file and a copy given to the employee.

Def. Br., Exh. 6, at § 32.102.

The Employment Policies provide a grievance procedure that is "the mechanism to be used to appeal disciplinary action in cases wherein the employee contends that the action taken was based on race, sex, religion, age, national origin, handicap, political association, or protected speech in violation of their civil or constitutional rights." *Id*. at § 32.115. The grievance procedure allows for a plenary hearing and an evidentiary hearing on the issues alleged by the employee. *Id*. § 32.118(c).

4

The grievance/appeal over the official's action must be made within fourteen days of notice of the official's action. *Id.*

The Finance Department for the Lake County Auditor's Office oversees the financial accounting system of the County and is responsible for the preparation of financial reports, the compilation and preparation for publication of the budget and proposed tax levies for all funds subject to the budget laws, and preparation of semiannual settlement of taxes to all units of local government. Historically, the Director of Finance was directly responsible for preparation of the budget, tax abstracts, and settlement of taxes. The material duties of Plaintiff's job as Director of Finance were to: oversee the employees of the finance department, prepare the abstract and tax settlement, oversee payroll, and make sure that monies were deposited into and withdrawn from the proper accounts.

James L. Wieser was the attorney for the Lake County Auditor during the time Plaintiff was employed as Director of Finance. Attorney Wieser received several complaints regarding Plaintiff's job performance after she began her employment with the Lake County Auditor's Office. Attorney Wieser received complaints from Mark Pearman (the Director of Data Processing for the County), County Surveyor George Van Til, Peggy Kotona (Treasurer at the relevant time), and Deborah Rondelli. Attorney Wieser also received a complaint with regard to a County Council study session that Plaintiff had attended during which she allegedly expressed inappropriate and embarrassing comments. Attorney Wieser recalled a couple of people within the Auditor's Office who found Plaintiff to be uncooperative and uncommunicative. Attorney Wieser never communicated any of these complaints to Plaintiff or to Companik, Plaintiff's direct supervisor.

5

As a result of the complaints, Attorney Wieser discussed with Stiglich his concern with the cumulative effects of Plaintiff's job incompetence and unprofessionalism.  Stiglich responded that he was receiving complaints as well; however, being heavily involved in and devoted to his reelection campaign, he wanted to wait until after the election to more thoroughly address the matter. Also, as a result of the complaints and issues regarding Plaintiff's job performance, Attorney Wieser requested that Mark Pearman, or anyone at Cenifax data processing, prepare and provide a written list of complaints/issues they perceived regarding Plaintiff's job performance.  In response, Pearman provided Attorney Wieser with a one-page memorandum dated January 21, 2005.  Within the Memorandum, Pearman indicates job performance problems pertaining to the preparation of settlements, issuing advance checks without following proper accounting principles, lack of training on the Lawson software, a lack of understanding or willingness to assist other departments with requests placed on the County Council agenda, and an inability to balance the 501 Fund with the computer program's Lawson and MVP programs.  *Id.*

As a result of the continued complaints, Attorney Wieser did not believe that Plaintiff could competently perform the duties required of the Finance Director for the Lake County Auditor's office.  After making that determination, Attorney Wieser spoke with Stiglich and was asked by Stiglich to request that Companik meet with Plaintiff and discuss her termination or resignation. Companik was surprised at Attorney Wieser's instruction to fire Plaintiff, because up to that point, it was Companik's impression that Plaintiff was doing a good job.

On January 26, 2005, Companik, pursuant to the directive made by Stiglich, spoke with Plaintiff and informed her that she was going to be terminated and that her last day was to be January 28, 2005.  On January 26, 2005, Plaintiff delivered a resignation letter.  On January 27,

6

2005, Attorney Wieser, on behalf of the Lake County Auditor, prepared and forwarded a written letter to the Lake County Board of Commissioners and the Lake County Council regarding the termination of Plaintiff and the reasons therefor.  Also on January 27, 2007, Plaintiff tendered a letter rescinding her January 26, 2005 resignation.  On January 28, 2005, Stiglich prepared and forwarded a letter accepting Plaintiff's resignation.

There exists a factual dispute in this case as to whether after her termination or resignation Plaintiff sought or engaged in any of the grievance procedures provided by the Lake County Employment Policies.  Attorney Wieser, in his Affidavit, states that Plaintiff did not seek or obtain any grievance hearing as afforded by the employment policy.  Plaintiff avers that Attorney Wieser's statement is false, that she filed her Grievance Initiation Form on February 7, 2005, that the Grievance Review Board never responded, and that she was advised by an attorney (name unknown) for Lake County that the grievance procedure would be futile and that she should retain counsel.

## RULE 59(e) STANDARD

Federal Rule of Civil Procedure 59(e) provides that, "[a]ny motion to alter or amend judgment shall be filed no later than 10 days after entry of the judgment," Fed.R.Civ.P. 59(e), which Plaintiff did in this instance.[2]  As to the substance, a Rule 59(e) motion "must clearly establish either a manifest error of law or fact or must present newly discovered evidence."  *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995) (quoting *Fed. Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir.1986)).  However, Rule 59(e) motions do not give a party the opportunity to rehash old arguments or to present new arguments "that could and should have been presented to the district court prior to the judgment." *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th

---

[2] None of the parties has set forth the standard for a Rule 59(e) motion to alter or amend judgment in the briefing on the instant motion.

Cir. 1996) (citing *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995)).

Explained in further detail, a motion for reconsideration is appropriate when:

> the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court.

*Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).  Finally, the decision of whether to grant or deny a Rule 59(e) motion "is entrusted to the sound judgment of the district court . . . ."  *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996); *see also LB Credit Corp.*, 49 F.3d at 1267.

## ANALYSIS

In the instant Motion, Plaintiff requests that the Court alter or amend its July 16, 2007 Order, which entered summary judgment in favor of Defendants on Counts IV and V of the Complaint and then dismissed without prejudice the state law claims in Counts I and II for lack of jurisdiction (the Court denied as moot the Motion for Summary Judgment as to Count III because Plaintiff withdrew the count in her response brief).  First, Plaintiff asserts that the Court erroneously held that portions of paragraph 11 of her Affidavit are hearsay, which materially affected her ability to demonstrate a genuine issue of material fact as to her First Amendment claim in Count IV.  Second, Plaintiff argues that the Court committed three errors in granting summary judgment on her due process claim in Count V, which are set forth in more detail below.  Finally, Plaintiff asks that, should the Court enter an altered or amended judgment on one or both of her federal claims (Counts IV and V), the Court reinstate her pendant state law claims (Counts I and II) that had been dismissed without prejudice on jurisdictional grounds.  The Court addresses each argument in turn.

### A.  Count IV - Interference with Voting Rights and Freedom of Association

*1.  Motion to Reconsider the Admissibility of Paragraph 11 of Plaintiff's Affidavit*

In its July 16, 2007 Opinion and Order, the Court held that certain portions of paragraph 11 of Plaintiff's Affidavit offered in support of her Response to the Motion for Summary Judgment contained inadmissible hearsay, and the Court struck those portions of the Affidavit.  As a direct result, the Court held that Plaintiff had not satisfied the personal-involvement requirement of liability for her claim under 42 U.S.C. § 1983 in Count IV of her Complaint.  The Court reasoned that Plaintiff had not offered any admissible evidence to raise a genuine issue of material fact as to whether Stiglich caused or participated in the alleged deprivations of Plaintiff's constitutional rights.

In the instant motion, Plaintiff requests that the Court reconsider its evidentiary ruling as to paragraph 11 of Plaintiff's Affidavit, arguing that the stricken portions of the Affidavit are not hearsay because (1) they are not offered for the truth of the matter asserted and (2) they are statements of a party opponent.  Having reviewed the stricken portions of the Affidavit, the Court finds that those portions are statements of a party opponent and thus are not hearsay pursuant to Federal Rule of Evidence 801(d)(2)(A).

In footnote 2 of their Reply Brief, Defendants, without citation to law, argue that "since the filing of this lawsuit, Auditor Stiglich has passed away.  As such, plaintiff's continual reference to statements allegedly made by Auditor Stiglich are hearsay."  Def. Reply, p. 17 n.2.  However, Stiglich's intervening death does change the applicability of Rule 801(d)(2)(A) or render his statements, in this context as statements of a party opponent, hearsay.  *See Savarese v. Agriss*, 883 F.2d 1194, 1200-01 (3d Cir. 1989) (holding that "the impact of the declarant's death impacts on the weight of the evidence rather than its admissibility;" noting the tactical risk a plaintiff assumes that

9

a jury is likely to discredit the purported utterance of the deceased party opponent simply because it is being offered); *see also White v. Honeywell*, 141 F.3d 1270, 1277 (8th Cir. 1998) (reasoning that the availability of the declarant is not relevant under Rule 801(d)(2)(D) because under the rule, the statement is not hearsay); *Thomas D. Wilson Consulting, Inc. v. Keely & Sons, Inc.*, No. 4:05CV2115, 2007 WL 1774434, at *7 n. 2 (E.D. Mo. June 18, 2007); *Todd v. City of Chi.*, 28 F. Supp. 2d 1062, 1064 (N.D. Ill 1998) (citing *Savarese*, 883 F.2d at 1200-01).

Accordingly, the Court grants the Motion to Alter and Amend as to its July 16, 2007 ruling striking portions of paragraph 11 of Plaintiff's Affidavit as hearsay and vacates its July 16, 2007 holding that the underlined portions of the Affidavit identified in the Court's Opinion Order are hearsay.

Defendants argue in response to the Motion to Alter or Amend Judgment that, even if the Court finds that the Affidavit is admissible, which the Court now has, the July 16, 2007 judgment entered on Count IV should stand because the Affidavit does not substantially remedy Plaintiff's inability to designate sufficient evidence regarding Stiglich's personal involvement in the alleged constitutional violation.  The Court disagrees.  Because the Court's initial ruling granting summary judgment on Count IV was based exclusively on a finding that Plaintiff had not offered evidence to establish a connection between Stiglich and the alleged constitutional violation, the Court now reconsiders the merits of the motion for summary judgment as to Count IV as originally argued by the parties in their briefs on summary judgment, including paragraph 11 of Plaintiff's Affidavit.

*2. Motion for Summary Judgment on Count IV - Interference with Voting Rights and Freedom of Association*

Plaintiff asserts Count IV of her Complaint against Robert Stiglich, as personal representative of Steven Stiglich (the Lake County Auditor) and Lake County, Indiana.  In the Complaint, Plaintiff alleges that she was intimidated by comments made to her by Leon West (the Porter County Democratic Chairman) and feared that she might lose her new position as Director of Finance if she did not disassociate with the Republican Party.  She further alleges that she unwillingly voted the Democratic ticket in the November 2004 primary because she knew that Stiglich and the Democratic Party would be verifying her vote and she believed her new job to be in jeopardy if she did not vote as demanded.  Finally, Plaintiff alleges that, as a result of such intimidation, she was deprived of her constitutional right to associate with the Republican Party. The Court set forth the relevant standard in the July 16, 2007 Order and here restates the standard for purposes of this motion.

The Plaintiff brings her claim of interference with First Amendment voting rights and freedom of association in Count IV under 42 U.S.C. § 1983, which provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Individual liability under 42 U.S.C. § 1983 can only be based on a finding that the individual defendant caused or participated in the deprivation at issue.  *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("An individual cannot be held liable in a § 1983 action unless he caused or participated in the

alleged constitutional deprivation."). A "causal connection, or an affirmative link" must exist between the deprivation and the defendant's conduct. *Wolf-Lillie,* 699 F.2d at 869. In order for a defendant to be held liable under § 1983, the plaintiff must establish that the defendant was personally involved or acquiesced in the alleged constitutional violation. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). An official cannot be held liable under § 1983 merely because his subordinates violated a plaintiff's constitutional rights. *See Polk County v. Dodson,* 454 U.S. 312, 325 (1981) (holding that § 1983 will not support a claim based on a theory of respondeat superior).

In their Memorandum in Support of the Motion for Summary Judgment on Count IV, Defendants argue that Plaintiff cannot designate sufficient evidence to demonstrate that Stiglich interfered with Plaintiff's voting rights and/or freedom of association. Defendants claim that, at no time did Stiglich ever specifically advise Plaintiff that she was required to affiliate with one political party or another as a requirement of her employment with the Lake County Auditor's Office. In response, Plaintiff contends that Stiglich acted under color of law in making her party affiliation an issue in her employment with the Lake County Auditor's Office and asserts that she has pointed to specific evidence showing that Defendants violated her First Amendment right of association.

As the factual basis for this alleged constitutional violation, Plaintiff alleges in her Complaint that, at the Porter County Democratic Jefferson/Jackson dinner, Porter County Democratic Chairman Leon West told Plaintiff that Stiglich and the Democratic Party would be checking her primary ticket, and that she better not embarrass her new boss, Auditor Stiglich. However, the evidence offered in support of her Response Brief demonstrates only that West made a comment some time

12

during that evening in relation to Plaintiff changing her party affiliation.[3]  Without more, Plaintiff cannot attribute the statements of West, the Democratic Chairman, to Stiglich, the County Auditor, for purposes of creating a genuine issue of material fact as to Stiglich's personal involvement with the alleged constitutional violation under the First Amendment and § 1983.  Therefore, the Court turns to the evidence offered by Plaintiff as to statements made or actions taken by Stiglich himself.

In her deposition, Plaintiff testified that the only conversation she had with Stiglich the night of the Jefferson/Jackson dinner was in reference to him seeing her in a week or two and to him looking forward to working with her.  Plaintiff also testified in her deposition that Stiglich never told her directly prior to being hired that she was required to vote Democratic; rather, she testified that Stiglich communicated this requirement through Judy Companik, who told Plaintiff prior to Plaintiff taking the position that a condition of her employment was that she change her ticket (political party affiliation).  In her deposition, Plaintiff testified generally that, after she was employed, she had a conversation with Stiglich in which he indicated that a prerequisite of her job was that she vote

---

[3] In her Response Brief, Plaintiff cites to her deposition for the following statement allegedly made by West at the party: "Be sure that you stand by your word and you change your party vote in the primary, because Stiglich does not want to be embarrassed.  We will be checking."  Pl. Br., Swiss Dep. 106:1-106:16.  However, page 106 of Plaintiff's deposition is not included in the excerpts of her deposition submitted in support of the Response Brief, nor have Defendants offered page 106.  Therefore, there is no evidence in the record supporting this statement.  However, at page 109 of Plaintiff's deposition, the following exchange takes place:

Q: "Okay. What was your response to the comments made to you reference[sic] changing your party affiliation by Mr. West?"
A.  I agreed.
Q. That was it?
A. That was it.
Q. You said, "I will?"
A. "I will." And he welcomed me.

Def. Br., Exh. 1 (Swiss Dep.) , p. 109, ll. 16-23.  Accordingly, there is some support in the record that West made comments to Plaintiff regarding changing her party affiliation.

13

Democratic.[4]  Plaintiff also stated in her deposition that Stiglich inquired after the primary, "I hope that you pulled the Democratic ticket," to which Plaintiff replied that she had.  She testified that he then made a reference indicating that the fact that she had pulled the Democratic ticket was recorded.[5]

In response to the Motion for Summary Judgment, Plaintiff submitted her Affidavit, asserting that Stiglich directly made comments to her prior to the primary regarding which ticket she would be voting and other comments pressuring her to change her political affiliation:

> Not only did Leon West approach me at the Jefferson/Jackson Dinner concerning his discussion with Auditor Stiglich, *Stiglich also directly told me that he was concerned*

---

[4] In her deposition, Plaintiff testified:
Q. . . . . I'm talking about a conversation that you had with Stiglich, where he told you, "Listen, you have to vote Democratic, or else you are not getting the job."  When did he say that?
A.  (No response.)
Q.  Before you were hired, when?
A.  At the Jefferson Jackson Day Dinner.
Q.  Now, he told you that at the –
A.  He didn't tell me that directly.
Q.  I got that.  You already said that.
A.  I don't know what you're asking for.
A.  Okay.  It's very simple, okay.  You have all of this experience in government.  You've dealt with much slicker and wiser people than me, I'm sure, all right.
        I'm asking you a very simple question: *When did Bob Stiglich tell you that as a prerequisite for this job, you had to vote Democratic*?
A.  Through Judy Companik, it was a condition of my employment that I –
Q.  Okay, forget Judy Companik.  *Did you ever have the conversation with Bob Stiglich, "yes" or "no"*?
A.  *After I was employed.*
Q.  Did you have a conversation with him before you were employed?
A.  Through Judy Companik.
Q.  Okay.  And what did Judy Companik say?
A.  I had to change my ticket.
Def. Br., Exh. 1, p. 256-57 (emphasis added).

[5] Plaintiff testified at her deposition:
Q.  All right.  So Judy [Companik] told you that; this Leon guy told you that, and that was the extent of the conversation that you had reference changing your vote?
A.  And then prior to the primary.
Q.  Stiglich told you to vote Democratic –
A.  Well, he made a reference, "I hope that you pulled the Democratic ticket."  And I said, "I did."  And he made reference to it being recorded.
Def. Br., Exh. 1, p. 258.

14

*that someone would look at my voting history.  Stiglich and I had several political conversations in his office during work hours to the effect of my voting Democrat in the upcoming primary election.*  In addition, *Stiglich demanded that I appear to have 'switched parties' and to become active with the local Democrat party.  He expressed concern that it would appear he hired a Republican from another county being paid from Democrat tax dollars in Lake County.*  In efforts to appease him and protect my job, I had my picture taken with Senator Bayh (Democrat) and placed it openly in my office.  When the Lt. Governor (Democrat) visited, I led her to the various offices in the county complex and introduced her.  *Stiglich also directed me and a couple other staff members to donate time working at Congressman Pete Visclosky's office* - I believe I worked three evenings and then once to greet the Governor.  I also attended Lake County Commissioner Scheub's fundraiser.  *I did everything Stig asked me to do in the political arena, including registering as a Democrat for voting in the Democratic primary.*  Shortly before my termination, *Stiglich told me that he looked forward to me being active on his upcoming campaign.*  I was intimidated by Stiglich's insistence that I switch to the Democratic party, that I vote in the Democratic primary, and that I engage in political functions and activities that would show I was a Democrat.  I felt that if I did not comply, I faced the risk of losing my new position in the Auditor's office.

Pl. Br., Exh. A, ¶ 11 (emphasis added).[6]

In their Memorandum offered in support of Summary Judgment and in the Motion to Strike,

Defendants argue that (1) the statements attributed to Stiglich in this Affidavit are in direct contrast

with Plaintiff's deposition testimony and (2) the alleged statements by Stiglich should be stricken

---

[6] The Seventh Circuit has made it clear that "self-serving statements in affidavits without factual support in the record carry no weight."  *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004); *Palmer v. Marion County*, 327 F.3d 588 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) ("The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.")).  However, such statements with support in the record can defeat a summary judgment motion.  *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004) (citing *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003)).  "The record, moreover, may include the self-serving affidavit itself, provided that the affidavit 'meets the usual requirements for evidence on summary judgment-including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there was a genuine issue for trial.'" *Id*. (citing *Payne*, 337 F.3d at 773).  The fact that those statements may be "self-serving" is not a valid grounds for deeming them inadmissible.  *See Payne*, 337 F.3d at 773.  A summary judgment motion is not a proper vehicle for resolving swearing matches.  *See, e.g.*, *Washington v. Haupert*, 481 F.3d 543, 551 (7th Cir. 2007) (citing *Payne*, 337 F.3d at 770).  Nevertheless, when the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587.

as non-specific and general in nature.  Defendants have not offered evidence of any specific statements in Plaintiff's Affidavit that contradict her deposition testimony.[7]

Defendants argue that the first sentence of paragraph 11 of the Affidavit contradicts Plaintiff's deposition testimony that Stiglich did not talk to her about her political affiliation at the Jefferson/Jackson dinner.  As admitted by Plaintiff, the first sentence of paragraph 11 of the Affidavit is perhaps inartfully drafted as the statement that "Stiglich also directly told me that he was concerned that someone would look at my voting history," is juxtaposed with the opening clause, "Not only did Leon West approach me at the Jefferson/Jackson Dinner concerning his discussion with Auditor Stiglich."  However, Plaintiff explains that the inclusion of both phrases in one sentence was not meant to link both men's statements as having taken place at the Jefferson/Jackson dinner but rather to demonstrate that not only did Leon West make a comment to her about her political affiliation (which, for context, she describes as having been made at the Jefferson/Jackson dinner), Stiglich also made comments to her about her political affiliation.

The only argument asserted by Defendants with a citation to evidence found in the record is the citation to page 256, lines 1-11 of Plaintiff's deposition, in which they argue she "stated . . . that Stiglich never told her that if she did not vote as a Democrat she would have no job."  Def.

---

[7] In their Memorandum in Support of the Motion to Strike, Defendants offer two specific portions of Plaintiff's deposition that they argue is inconsistent with her deposition; however, neither of the cited deposition excerpts are included in the record submitted to the Court.  Notably, neither of the cited pages is included in Defendant's "Designation of Evidence" either.

First, Defendants cite page 253, lines 2-15, of Plaintiff's deposition and argue that she "admitted in her deposition that she was never told by anybody from the Auditor's Office that if she did not vote a certain way, her job would be terminated."  Def. Mem. in Support of Mot. to Strike, p. 9.  However, Defendants did not include page 253 of Plaintiff's deposition in their submission in support of summary judgment, and no separate filing was made in support of the motion to strike. Nor is page 253 included in the pages of the deposition designated by Plaintiff.

Second, Defendants cite page 251, lines 12-17, of Plaintiff's deposition and assert that she "was never told that if she did not participate in an election campaign, she would be fired."  Def. Mem. in Support of Mot. to Strike, p. 9.  Again, page 251 of Plaintiff's deposition is not included in the record.

Mem. in Support of Mot. to Strike, p. 9.  However, the actual text of these lines of her deposition is set forth in footnote 4 above, and Plaintiff specifically affirmed that Stiglich told her after she was employed that a prerequisite of her job was that she had to vote Democratic.  Therefore, the Court finds that the Affidavit does not contradict Plaintiff's deposition testimony.

Accordingly, the Court turns to Defendants' second argument, which is that the statements in the Affidavit are "vague and ambiguous" and "a deliberate attempt to insinuate statements made by Stiglich without any direct certainty."  Def. Mem. in Support of Mot. to Strike, p. 9.  The Court finds that the portions of Plaintiff's deposition testimony and Affidavit identified above provide competent evidence of Stiglich telling Plaintiff to change her party affiliation and to vote Democratic in the November 2004 primary.  In other words, if Plaintiff's testimony were credited, a jury could find that Stiglich pressured her to change her party affiliation and to vote the Democratic ticket in the primary election as a condition of her employment as Director of Finance. As such, Plaintiff has set forth specific facts based on her personal knowledge to raise a genuine issue of material fact as to Stiglich's personal involvement in the alleged constitutional violation and, thus, has raised a barrier to summary judgment for Defendants on Count IV on this basis.  *See, e.g.*, *Dalton v. Battaglia*, 402 F.3d 729, 735 (7th Cir. 2005) (holding that "the record may include a so-called 'self-serving' affidavit provided it is based on personal knowledge").  Therefore, the Court denies the Motion for Summary Judgment as to the allegations in Count IV of Plaintiff's Complaint.

*3.  Political Patronage v. First Amendment Speech*

In their Reply Brief, Defendants argue that, because Plaintiff has withdrawn her retaliatory discharge claim in Count III of her Complaint, "the alleged protected conduct in 'Free Speech' and

17

'Political Association' can and should no longer be considered with regards to the ultimate resignation/termination of [Plaintiff]." Def. Reply, p. 13. More specifically, Defendants argue that, although Count IV alleges interference with political association, because Plaintiff has voluntarily withdrawn her claim of retaliation based on the alleged exercise of First Amendment Rights, Count IV should be dismissed as well.

However, Plaintiff's decision to withdraw Count III, which was a claim of retaliation based on her First Amendment speech related to the "Jerry Scheub fund" and the "black hole fund," was based on the facts developed through discovery and the Supreme Court's decision in *Garcetti v. Ceballos*. *Garcetti* held that, when public employees make statements pursuant to their official duties, they are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Unlike Count III, Count IV is not based on Plaintiff's speech but rather is based on her political affiliation or patronage, which is a distinct basis for alleging violations of First Amendment rights. *See, e.g.*, *Snyder v. Blagojevich*, 332 F. Supp. 2d 1132, 1139 (N.D. Ill. 2004) (holding that the plaintiff's First Amendment claims of retaliation based on speech and political patronage were analytically distinct). Therefore, as to the argument submitted by Defendants in their Reply Brief, the Court finds that Plaintiff did not dismiss Count IV as a result of her dismissal of Count III.

### B.  Count V - Violation of Procedural Due Process

In Count V of her Complaint, entitled "Violation of Procedural Due Process," Plaintiff alleges:

> 61.  Defendants withdrew their agreement with and their promises to Plaintiff without providing notice and an opportunity to be heard and without utilizing uniform standards applicable to such action.

62. Defendants failed to follow Lake County's written procedure for disciplining and/or terminating the employment of Plaintiff.

63. Defendants' actions with respect to terminating Plaintiff's employment without following established procedural safeguards violates Plaintiff's rights to due process under the Indiana Constitution and the United States Constitution.

64. As a direct and proximate cause of Defendants' unconstitutional actions, Plaintiff has suffered compensatory damages in an amount to be determined at trial.

Pl. Cmplt. The Court set forth the relevant standard in the July 16, 2007 Order and here restates the standard for purposes of this motion.[8]

"No state shall . . . deprive any person of . . . property without due process of law . . ." U.S. Const. amend. XIV, § 1. When the states and their instrumentalities act to deprive a person of property, the Due Process Clause of the Fourteenth Amendment imposes a requirement of procedural fairness. *Id.* At a minimum, due process requires notice of the basis for the proposed action and a fair opportunity to be heard. *See Walker v. City of Hutchinson*, 352 U.S. 112, 115 (1956). The Supreme Court has held that public employees may have an interest in their continued employment which rises to the level of "property" so as to trigger the protections of procedural due process. *See Board of Regents v. Roth,* 408 U.S. 564 (1972); *Perry v. Sindermann,* 408 U.S. 593 (1972). A property interest may arise from a statute, ordinance, or contract. In *Roth,* the U.S. Supreme Court stated:

> To have a property interest in a benefit [such as a job] a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

---

[8] The Court notes that the same analysis applies to the state and federal claims. *See Indiana High Sch. Athletic Ass'n, Inc. v. Carlberg by Carlberg*, 694 N.E.2d 222, 241 (Ind. 1997) (citing *Shook Heavy & Envtl. Constr. Group v. City of Kokomo*, 632 N.E.2d 355, 361 (Ind. 1994)).

408 U.S. at 577.  The Supreme Court also held that property interests are not created by the U.S. Constitution, but rather by existing rules or understandings that stem from an independent source such as state law.  *Id.*  Once a property interest in a civil service job is created by the legislature, the constitutional right to due process attaches.  *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).  However, the Supreme Court recognized the right of a state legislature to choose whether or not to create a property interest in civil service jobs.  *Id.*

To establish a due process claim, Plaintiff must demonstrate: "(1) that [s]he had a constitutionally protected property interest, (2) that [s]he suffered a loss of that interest amounting to a deprivation, and (3) that the deprivation occurred without due process of law."  *Moss v. Martin*, 473 F.3d 694, 700 (7th Cir. 2007) (*citing Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 360 (7th Cir. 2005); *Polenz v. Parrott*, 883 F.2d 551, 555 (7th Cir. 1989)).  A protected property interest in employment can arise from a state statute, regulation, municipal ordinance, or an express or implied contract.  *See Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 943 (7th Cir. 1996).  To be protected, a person must have a legitimate claim of entitlement rather than only a unilateral expectation of some benefit.  *See Amendola v. Schliewe*, 732 F.2d 79, 83 (7th Cir. 1984).  If a deprivation has occurred, the Court evaluates what process is due Plaintiff before she can be deprived of that entitlement.  *See Fittshur v. Vill. of Menomonee Falls*, 31 F.3d 1401, 1405 (7th Cir. 1994).

In its July 16, 2007 Order, the Court granted summary judgment in favor of Defendants on Plaintiff's procedural due process claim, holding that (1) Plaintiff was an employee at-will, and thus she did not have a protected property interest, and (2) Defendants complied with the Immediate Discharge Policy of the Lake County Employment Policies.

20

In the instant motion for reconsideration, Plaintiff asserts that the Court erred in finding that she did not have a protected property interest in her employment and in finding that Defendants complied with the Immediate Discharge Policy.  The Court considers each in turn, beginning with the latter.

1.  *Lake County Employment Policies - Immediate Discharge Policy*

Section 32.102 of the Lake County Employment Policies provides:

> In some instances, the official may conclude the employee's conduct justifies immediate discharge.  The official has no obligation to use any of these forms of discipline before discharging an employee.  However, in all instances a written record shall be made of each action including an oral warning.  The original written record shall be maintained in the employee's personnel file and a copy given to the employee.

Def. Br., Exh. 6, at § 32.102.

After citing this section of the Employment Policies and noting Defendants' arguments, the Court held in its July 16, 2007 Order:

> Plaintiff urges that Lake County did not follow their own policy concerning immediate discharge since they: (1) notified her on a Wednesday that she was to work through the end of the week; and (2) discussed the decision to terminate her employment in the Fall of 2004, but made the actual termination decision as late as January 23, 2005.  Even assuming that Plaintiff had a property interest in her employment (she did not), the Court finds these arguments by the Plaintiff unconvincing. The evidence submitted to the Court supports Defendants' contention of compliance with the Lake County Employment Policy.

July 16, 2007 Opinion and Order [DE 58], p. 26.

In the instant motion, Plaintiff argues that, "by holding that Defendants properly dismissed [Plaintiff] under the Immediate Discharge Policy, the Court erroneously resolved the key factual dispute regarding whether cause existed for her termination."  Pl. Mot. for Reconsideration, p. 8 (internal citations omitted).  Plaintiff offers no other argument, law, or analysis, but cites as support

two portions of her Response Brief in Opposition to the Motion for Summary Judgment, which she describes as "detailing factual issues concerning Defendants' allegations of substandard performance" and "describing non-performance related activities that reasonable fact finder[sic] could determine formed the true basis for [Plaintiff's] discharge." *Id*.

Plaintiff's characterization of the Court's ruling is without foundation.  The Court did not explicitly make a finding that cause existed for Plaintiff's termination; rather, the Court held that Defendants complied with the Immediate Discharge Provision of the Lake County Employment Policies when her employment was terminated.  Nor did the Court implicitly find that cause existed for Plaintiff's termination.  Section 32.102 of the Employment Policies allows for an official to determine that an employee's conduct justifies immediate discharge, in which case, the official is not required to use any of the other forms of discipline set forth in the Employment Policies prior to discharging the employee.  In this case, Stiglich determined that Plaintiff's conduct justified immediate discharge, and, for the purposes of Plaintiff's due process claim, the Court need not determine whether Stiglich was *correct* in his determination that Plaintiff's conduct justified immediate discharge (was "for cause") in order to find that Defendants complied with Lake County's written procedure for terminating Plaintiff.

Accordingly, the Court denies the Motion for Reconsideration on this issue.  The Court reaffirms the July 16, 2007 Order granting summary judgment to Defendants on Count V of Plaintiff's Complaint, reaffirming that Plaintiff cannot establish that her alleged constitutional deprivation (the termination of her employment as Director of Finance for Lake County) occurred without procedural due process because Defendants followed the established procedural safeguards set forth in Section 32.102 of the Lake County Employment Policies.

*2. Protected Property Interest*

Notwithstanding its reaffirmation of the grant of summary judgment on Count V of Plaintiff's Complaint, the Court addresses Plaintiff's remaining basis for reconsidering the ruling as to Count V.  Plaintiff provides two arguments to support her request that the Court reconsider its ruling that Plaintiff is an employee at-will and that, as a result, she did not have a protected property interest in her employment.  First, she argues that the Court improperly granted summary judgment *sua sponte* on this issue because Defendant did not move for summary judgment on the issue of property interest or argue that Plaintiff did *not* have a protected property interest and, therefore, she did not have an opportunity to respond.  Second, in apparent contradiction to her first argument, Plaintiff contends that she did, in fact, identify in her Response Brief in Opposition to the Motion for Summary Judgment a protected property interest in her employment because she demonstrated that there are genuine issues of material fact as to whether she was an employee at will in the context of her state law contract and promissory estoppel claims.

As an initial matter, Plaintiff's arguments are not contradictory.  Plaintiff correctly notes that Defendants did not move for summary judgment on Count V on the basis that Plaintiff did not have a protected property interest.  As a result, in the context of her argument on Count V (Part C.3), Plaintiff's Response Brief did not address whether she had a protected property interest.  However, in a separate section of her Response Brief (Part C.1), Plaintiff did argue comprehensively in the context of her two state law claims–breach of contract and promissory estoppel (Counts I and II)–that there are genuine issues of material fact as to whether she was an employee at will. Defendants then argued for the first time in their Reply Brief that Plaintiff's procedural due process claim fails because she did not have a protected property interest in her employment because (1) she

23

was an employee at will in the absence of a contract and, (2) even if promissory estoppel is applied, there was a justifiable motivation for the adverse employment action.  Defendants offered no substantive argument or law on the issues of (1) whether an employment contract had been formed under state law or (2) promissory estoppel.

As to Plaintiff's first argument, the Court finds that it did not impermissibly address *sua sponte* the issue of whether she had a protected property interest in her employment with Lake County because both parties had a full and fair opportunity to brief the issue on the Motion for Summary Judgment.  *See, e.g.*, *Johnson v. ExxonMobil Corp.*, 426 F.3d 887, 893 (7th Cir. 2005). Although Defendants first argue that she did not have a protected property interest in their reply brief and arguments cannot be raised for the first time in a reply brief, *Amerson v. Farrey*, 492 F.3d 848, 852 (7th Cir. 2007), Plaintiff had already raised the contract and promissory estoppel issues in her Response Brief.  Moreover, the substantive arguments raised by Plaintiff in the instant Motion to Reconsider arguing that she had a protected property interest in the context of her procedural due process claim in Count V are identical to those she raised in her Response Brief in Opposition to the Motion for Summary Judgment in relation to her state law claims in Counts I and II.  In other words, Plaintiff has not offered any new law or argument to demonstrate that she did not have a full and fair opportunity on summary judgment to establish that she had a property interest in her employment. Nor has Plaintiff argued that she should be given the opportunity to offer any other law or argument other than that which has now twice been presented to the Court.  Therefore, the Court denies the Motion for Reconsideration on this basis.

However, the Court grants the Motion for Reconsideration as to its July 16, 2007 holding that Plaintiff was an employee at will and thus did not have a protected property interest because the

Court did not address Plaintiff's contract and promissory estoppel arguments when considering

whether she was an employee at will.  As Plaintiff notes in both the Response Brief in Opposition

to the Motion for Summary Judgment and her Motion for Reconsideration, there are two exceptions

to the employment-at-will doctrine that are applicable in the context of an employer recruiting an

employee from a secure job.  *See Coutee v. LaFayette Neighborhood Hous. Servs.*, 792 N.E.2d 907,

910-912 (Ind. Ct. App. 2003).  The Indiana court explained:

> Indiana law provides that if there is no definite or ascertainable term of
> employment, then the employment is at-will, and is presumptively terminable at any
> time, with or without cause.
>
> Our supreme court has recognized only three exceptions to the
> employment-at-will doctrine. First, if an employee establishes that "adequate
> independent consideration" supports the employment contract, then the parties are
> considered to have intended to establish a relationship in which the employer may
> terminate the employee only for good cause.  For example, adequate independent
> consideration is provided when the employer is aware that "the employee had a
> former job with assured permanency" and "the employee was only accepting the new
> job upon receiving assurances the new employer could guarantee similar
> permanency," . . . .
> . . . .
> Third, our supreme court recognized that, in certain instances, an employee
> may invoke the doctrine of promissory estoppel. To do so, the employee must assert
> and demonstrate that the employer made a promise to the employee, that the
> employee relied on that promise to his detriment, and that the promise otherwise fits
> within the Restatement test for promissory estoppel.

*Id*. at 911-12 (internal citations omitted).  In her Response Brief in Opposition to the Motion for

Summary Judgment and in her Memorandum in Support of the Motion for Reconsideration, Plaintiff

sets forth the following identical set of facts that raise genuine issues of material fact as to whether

she is an employee at will or whether one of the exceptions to the employment-at-will doctrine

established by the Indiana Supreme Court applies:

> In April, 2004, Lake County Deputy Auditor Companik contacted the State
> Board of Accounts area supervisor, Mary Jo Blickenstaff, and informed her that the
> current Finance Director, Angela, had resigned from the Lake County Auditor's

25

Office.  Blickenstaff told [Plaintiff] that Companik had spoken with her and wanted [Plaintiff] for the Director of Finance position.  At no time prior to this did [Plaintiff] contact or solicit from any county employee a position with Lake County Government; [Plaintiff] was content in her job with the State Board of Accounts–the county contacted her regarding the job opening.  Companik confirms that Blickenstaff recommended [Plaintiff] to her for the job, and that Blickenstaff "thought that [Plaintiff] would make a very good director of finance."

[Plaintiff] expressed her concern to Companik about the benefits and job security that she presently enjoyed with the State Board of Accounts, and Companik assured her that she would give up nothing if she accepted the position with Lake County.  Both Companik and Stiglich knew that [Plaintiff] held a secure position with the State Board of Accounts.

Indeed, job security was a key concern in [Plaintiff's] decision whether to resign from the State Board of Accounts in favor of the Director of Finance position; and prior to being tapped by the Auditor's Office, [Plaintiff] had never considered leaving her job with the State Board.  Prior to [Plaintiff] accepting the job as Director of Finance, she asked about the security of the position and was assured by Companik and Stiglich that the job was hers for as long as she wanted to work.  In reliance on Defendants' promises of job security, [Plaintiff] resigned from her secure position with the State Board of Accounts.

Pl. Resp. Br., p. 27 (internal citations omitted); Pl. Mem. in Support of Mot. for Reconsideration, pp. 7-8 (same).

Although the Court now alters its July 16, 2007 Order to find that a genuine issue of material fact exists as to whether Plaintiff had a protected property interest in her employment as Director of Finance for Lake County based on the contract and promissory estoppel exceptions to the employment-at-will doctrine under Indiana law, the Court nevertheless again reaffirms the dismissal of Count V on the basis set forth above in Part B.1.–that Plaintiff was not deprived of due process in the termination of her employment.

## C.  Plaintiff's State Law Claims

In their Motion for Summary Judgment, Defendants argued that Plaintiff's pendent state law claims of Breach of Contract (Count I) and Promissory Estoppel (Count II) should be dismissed following a grant of summary judgment in favor of Defendants on Plaintiff's federal claims (Counts

III-V).  Because Plaintiff had withdrawn Count III and the Court had granted summary judgment on the remaining federal claims (Counts IV & V), the Court dismissed without prejudice the state law claims, citing 28 U.S.C. § 1367(c)(3); *East-Miller v. Lake County Highway Department*, 421 F.3d 558, 564 (7th Cir. 2005).

In the Motion for Reconsideration, Plaintiff argues that, if the Court alters or amends its judgment to reinstate one or more of Plaintiff's federal claims, the Court should also reinstate her pendant state law claims.  Because the Court has reinstated Plaintiff's federal claim brought in Count IV, the Court no longer declines to exercise its supplemental jurisdiction over the pendant state law claims.  Therefore, the Court grants the Motion to Alter or Amend as to the dismissal without prejudice of the state law claims, alters the July 16, 2007 Order to vacate the holding that the pendant state law claims were dismissed without prejudice, and orders that the state law claims are hereby reinstated.

### D.  Policymaker Exception to First Amendment Liability

While the Court did not address the issue of whether the Director of Finance is a policymaker in the July 16, 2007 Order because none of Plaintiff's federal claims survived the Motion for Summary Judgment, because Count IV has been reinstated in the instant Opinion and Order, the court now addresses the arguments and evidence submitted by the parties in the briefs on the Motion for Summary Judgment.[9]

---

[9] In their opening brief on summary judgment, Defendants assert facts in the Statement of Material Facts (Part II) to support the statement that the "Director of Finance for the Lake County Auditor's office is/was a policy making position," Def. Br., p. 2; however, nowhere in their brief do Defendants set forth a legal standard for determining whether an employee is a policymaker or offer any legal analysis of the impact of Plaintiff's alleged status as a policymaker has on her legal claims.  In her Response Brief, Plaintiff asserts that Defendants "argue that [she] occupied a policy-making position and thus was subject to termination at their whim," Pl. Resp, p. 22, and fully responds with law in the context of termination cases and the facts of this case to assert that she was not a policymaker, specifically arguing that the question is one for the jury.

Although the First Amendment protects public employees from suffering adverse job actions because of their political beliefs and associations, *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 69-71 (1990), an "exception to this general rule is permitted when the government employee responsible for the adverse action can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Carlson v. Gorecki*, 374 F.3d 461, 464 (7th Cir. 2004) (citing *Branti v. Finkel*, 445 U.S. 507, 517-18 (1980)). Courts typically refer to this exception as the "policy-making" or "confidential" employee exception because those terms fit the majority of situations in which the exception applies. *Id.* The ultimate inquiry, however, is not whether the job fits the label of "policymaker" or "confidential," but whether party affiliation is an appropriate requirement for effectively performing the job. *See Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 756 (7th Cir. 2002) (quoting *Branti*, 445 U.S. at 517-18).

The Court must examine whether the position "involves the making of policy and thus the exercise of political judgment or the provision of political advice to the elected superior, or . . . gives the holder access to his political superiors' confidential, politically sensitive thoughts." *Riley v. Blagojevich*, 425 F.3d 357, 359 (7th Cir. 2005), *cert. denied*, 126 S.Ct. 1793 (2006) (citations omitted). The Court also considers "the degree of discretion and responsibility exercised in the position." *Allen v. Martin,* 460 F.3d 939, 944 (7th Cir. 2006) (citations omitted). Finally, the Court

---

In their Reply Brief, Defendants then argue briefly that Plaintiff is a policymaker in the context of Count V, on which Defendants have now been granted summary judgment, but also discuss the issue at length in the context of Count IV, reiterating the same evidence offered in the original brief. Accordingly, because Count IV has been reinstated, the Court addresses the issue of whether Plaintiff was a policymaker in the context of summary judgment. Nevertheless, the Court notes that, in *Wensing v. Thompson*, the Seventh Circuit recognized that the policymaker exception is traditionally applied only in cases of patronage hiring and firing or First Amendment retaliation and held that the policymaker exception does not apply to prior restraint claims based on speech. *See Wensing v. Thompson*, 423 F.3d 732, 747 (7th Cir. 2005).

looks at "whether the employee acts as an adviser or formulates plans for the implementation of broad goals." *Thompson*, 300 F.3d at 756 (citation omitted).  Relying on labels that describe a job is discouraged.  *Id.*  Rather, if a position "authorizes, either directly or indirectly, meaningful input into government decisionmaking on issues where there is room for principled disagreement on goals or their implementation," it will be found to involve policymaking.  *Kiddy-Brown*, 408 F.3d at 355 (citation omitted).

Generally, the question of whether an employee is a policymaker is a factual question left for the jury to determine; however, when the duties and responsibilities of a particular position are clearly established, the court may make the determination, as a matter of law, that a particular position is a policymaking position.  *See Pleva v. Norquist*, 195 F.3d 905, 912 (7th Cir. 1999); *see also Riley*, 425 F.3d at 361; *Warzon v. Drew*, 60 F.3d 1234, 1240 (7th Cir. 1995).

In this case, the Court finds that no evidence has been submitted clearly establishing the duties and responsibilities of the Director of Finance.  Defendants do not offer any law that sets forth the duties of the Director of Finance, and neither party has provided a job description for the Director of Finance.  As Exhibit 5 to their Motion for Summary Judgment, Defendants offer a document created in the normal course of the business of the Lake County Auditor's Office that sets forth the "Job Duties" of the "Finance Department."  Nothing in the document sets forth the duties of the *Director* of the Finance Department.  Moreover, none of the duties of the Finance Department listed in the document appear to be duties that entail "advis[ing] or formulat[ing] plans for the implementation of broad goals," or providing "meaningful input into government decisionmaking on issues where there is room for principled disagreement on goals or their implementation."  Some representative examples of the Department's duties are being expert users of complex accounting

29

software (which requires creative problem solving, among other skills, to maintain the accuracy of the financial records), preparing financial reports, monthly reconciliations, analyzing transactions, compiling and preparing the budget and proposed tax levies for publication, serving as the custodian for funds held in trust by the county, conducting the semiannual settlement of taxes to all units of local government (which involves determining how much tax is due to the government units based on the totals of taxes collected certified by the Treasurer), and preparing the Abstract of Assessments and Taxes.

The document also provides that the duties and responsibilities of the Finance Department involve or directly impact departments of the county and local government units. However, the importance of the duties of the Department in that they impact the distribution of funds to these government units does not automatically impute discretionary duties to the Department or its Director as a matter of law. Finally, a "Lake County Auditor Organizational Chart" was submitted as part of this document. It shows that serving directly under the Lake County Auditor is the Executive Director of Finance, under whom serve the Director of Taxation and the Director of Finance. Nothing in this chart demonstrates as a matter of law that the Director of Finance is in a policymaking position.

As to the position of Director specifically, deposition testimony from Weiser and Plaintiff establishes that, "[h]istorically, the Director of Finance was directly responsible for the preparation of the budget, tax abstracts and settlement of taxes." Def. Br., p. 3. A listing of these three functional tasks does not establish as a matter of law that the Director of Finance is a policymaker who is involved in making political judgments; gives political advice to an elected superior; has access to her political superiors' confidential, politically sensitive thoughts; has a significant degree

of discretion; acts as an adviser or formulates plans for the implementation of broad goals; and is authorized to give meaningful input into government decisionmaking on issues for which there is room for principled disagreement on goals or their implementation.

Finally, Defendants offer the conclusion in Weiser's deposition testimony that the Director of Finance is a policy-making position because "[t]he Executive Director [of the Lake County Auditor's Office], the Director of Finance, and the Director of Taxation, are individuals who are . . . directly involved in the making and establishment and setting of policy and in the operation of the Auditor's Office." Def. Br., Exh. 2, p. 38 (Weiser's Dep.). However, when Weiser was then asked to give examples of some policy that the Director of Finance would be able make on her own, Weiser was unable to give any examples. He did offer that the Director of Finance worked in collaborative efforts in consulting on "the abstract that related to the financial operation." *Id*. at p. 38.

In opposition, Plaintiff offers her deposition testimony that she was not in a policymaking position. In her Affidavit, she asserts that the Director of Finance is not a policymaker and gives examples of the ways in which her job duties were circumscribed by federal and state statute and the guidelines established by the State Board of Accounts.[10] For example, she states that the Executive Director (Chief Deputy Companik) and the Lake County Council had the responsibility for the Lake County budgets and that budgeting was not a job duty of the Director of Finance. She also states that the tax levies are set by the State of Indiana based on local assessments, which are the responsibility of the Assessors and the Director of Taxation, and on budgets, which are provided by local government units, and that the Director of Finance had no responsibility for the levies. She

---

[10] For the purposes of ruling on the instant Motion to Alter or Amend Judgment and the Motion for Summary Judgment, the Court denies Defendant's Motion to Strike as to paragraphs 2, 3, and 4 of Plaintiff's Affidavit.

represents that she had no authority to change, alter, or manipulate any of the numbers imputed in the data system, and she describes the process of preparing the tax Abstract and Settlement of Taxes, which required her to print figures that were provided by Cenifax and then reconcile any disagreement in the amounts by working with Cenifax.

While the parties dispute the responsibility, or lack thereof, that Plaintiff actually enjoyed while Director of Finance, the Court's inquiry is as to the position of Director of Finance and not to the specific responsibilities assigned to Plaintiff.  *See Thompson*, 300 F.3d at 756 ("[W]e look at the nature of the responsibilities and focus on the duties inherent in an office, and not the functions of the position performed by a particular person").  As noted above, Defendants have not offered any documentation as to the actual duties of the position of Director of Finance, focusing almost entirely on the duties of the Department, and the duties of the Department do not establish as a matter of law that its director is a policymaker.  At best, the evidence of record demonstrates the discretion Plaintiff may have been able to exercise related to how best to implement the policies formulated by her political superiors and to technical or professional judgments rather than political ones, which would not make her a policymaker.  *See Fuerst v. Clarke*, 454 F.3d 770, 772-73 (7th Cir. 2006)

Defendants have not shown, as a matter of law, that the Director of Finance in the Lake County Auditor's Office is in a policymaking position.  Accordingly, the Court denies summary judgment on the issue of whether the Director of Finance is a policymaker.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS in part** and **DENIES in part** Plaintiff Pamela J. Swiss's Motion to Alter or Amend the Judgment Entered on July 16, 2007 [DE 61].

Accordingly, the Court **ALTERS and AMENDS** its July 16, 2007 Opinion and Order [DE 58] and hereby **DENIES** the Motion for Summary Judgment [DE 31] as to Count IV.  As a result, the Court **REINSTATES** Counts I and II (the state law claims that had been dismissed without prejudice on jurisdictional grounds).

The Court **REAFFIRMS** the July 16, 2007 Opinion and Order [DE 58] to the extent that the Court **GRANTED** Defendants' Motion for Summary Judgment as to Count V, **DENIED as moot** the Motion for Summary Judgment as to Count III, and **ORDERED** that Count III is **WITHDRAWN**.

The Court **DIRECTS** the Clerk of Court to **REOPEN** this case.

The Court will set this matter for a telephonic scheduling conference by separate order to schedule this matter for trial.

SO ORDERED this 20th day of March, 2008.


s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record

33